**CV 16 - 01583**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
CLERK

2016 MAR 31   PM 2:01

------------------------------------------------------------X
SHERYL BERNARD, individually and on behalf of
S.B., a minor, and DENZIL BERNARD, individually
and on behalf of S.B., a minor,

ECF CASE

COMPLAINT AND
JURY DEMAND

Plaintiffs,

v.

**KUNTZ, J.**

The City of New York, New York City Administration
for Children's Services (ACS), Mercy First, Deirdre Abrams,
individually and as ACS caseworker, Theresa Laylock
individually and as ACS case manager,
Nicole Leeks, individually and as ACS Manager,
NOELLA YOUNG, individually and as MercyFirst caseworker,
JASMINE USHER,
individually and as Brooklyn Family Psychological
Services Therapist, Brooklyn Family Psychological Services,
Mercy First.

**POLLAK, M.J.**

Defendants.
------------------------------------------------------------X

Now comes the Plaintiffs Sheryl Bernard, individually, and as parent and natural guardian

of the infant S.B., and Denzil Bernard, individually and as parent and natural guardian of the

infant S.B. by their attorney Richard P. Reyes, Esq., and files the Complaint against the

Defendants in their individual and official capacity and thereby respectfully shows the Court as

follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action, pursuant to 42 U.S.C. Section 1983, in which Plaintiffs

seek damages to redress the deprivation, under color of state law, of rights secured to them under the

First, Fourth and Fourteenth Amendments to the United States Constitution. Plaintiffs also seek

damages for the deprivation of their rights under New York law. Defendants interfered with the Plaintiff Child's care and custody, and restricted their access to their parents, the adult Plaintiffs, without consent, probable cause, or due process of law where restricted from access to Plaintiff Child.

2. Plaintiffs bring these claims under the laws of the United States and for violation of their rights, including unlawful seizure, malicious prosecution, and procedural due process violation from the continued removal of the child from care under false pretenses, substantive due process violations, custodial interference, and negligence.

## JURISDICTION

3. Jurisdiction is conferred on this court by 28 U.S.C. §§1343(3) and (4), which provide for original jurisdiction in this court of all suits brought pursuant to 42 U.S.C. §1983. Jurisdiction is also conferred on this court by 28 U.S.C. §1331(a) because the case arises under the Constitution and the laws of the United States. Pursuant to 28 U.S.C. §1367, this court has pendent jurisdiction over Plaintiff's state law claims.

## VENUE

4. Venue is proper for the United States District Court for the Easter District of New York pursuant to 28 U.S.C. § 1391 (b) and (c).

## PARTIES

5. Plaintiff S.B., child by parents and natural guardians Plaintiffs Sheryl Bernard and Denzil Bernard, at all times mentioned herein, is a resident of the City of New York, County of Kings.

6. Plaintiff Sheryl Bernard, individually, at all times mentioned herein, is a resident of the City of New York, County of Kings.

7. Plaintiff Denzil Bernard, individually, at all times mentioned herein, is a resident of the City of New Yorks, County of Kings.

8. Defendant Deidre Abrams, at all times mentioned herein, is sued individually and as a caseworker with ACS.

9. Defendant Theresa Laylock, at all times mentioned herein, is sued individually and as a case manager with ACS.

10. Defendant Nicole Leeks, at all times mentioned herein, is sued individually and as a case manager with ACS.

11. At all times herein mentioned, upon information and belief, Defendant New York City's Administration For Children's Services (ACS), was and continues to be, authorized by New York State law to investigate complaints of child abuse and neglect and to care for children remanded to foster care. Children remanded to foster care are in the legal custody of the Commissioner of ACS.

12. Defendant Noella Young, at all times mentioned herein, is sued individually, and as a a caseworker with MercyFirst.

13. Mercy First is a not-for-profit corporation organized under the laws of the State of New York and is an "authorized agency" as defined in New York Social Services Law § 371. GWS is in the business of providing foster care, under contract with the City of New York, to children who have been placed in the custody of the Commissioner of New York City's Administration for Children's Services (hereinafter "ACS"). In providing foster care services, Mercy First operates under color of state law.

14. At all times relevant hereto, Noella Young was an employee of Mercy First, and

acted in the capacity of agent, servant, and employee of Mercy First, and within the scope of employment at Mercy First. At all times relevant hereto, Laylock, Leeks and Abrams were employees of the City, and acted in the capacity of agent, servant, and employee of City, and within the scope of employment for the City.

15. Upon information and belief, Defendant Jasmine Usher is a psychotherapist licensed to practice in the State of New York and was the therapist for the child. At all times herein mentioned, upon information and belief, Jasmine Usher was an employee, servants and/or agents of Brooklyn Family Psychological Services and was acting under the supervision of the Brooklyn Family Psychological Services and according to her official duties and is sued in their individual and official capacities.

16. Upon information and belief, Defendant Brooklyn Family Psychological Services employed Jasmine Usher and she was working under the supervision of the Brooklyn Family Psychological Services as she provided therapy to the child. Brooklyn Family Psychological Services is sued in their individual and official capacities.

17. At all times hereinafter mentioned the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

18. Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment.

19. Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment.

## STATEMENT OF FACTS

20. On January 7, 2010 Plaintiff Sheryl Bernard brought her daughter, S.B., who was 4 years old at the time, to the pediatrician's office at Long Island College Hospital (LICH) in Brooklyn for examination because the child was experiencing vaginal discharge. A vaginal culture was taken.

21. On January 15, 2010, Dr. Messinger, the child's pediatrician, informed Plaintiff Mother that the child had tested positive for gonorrhea, and notified ACS.

22. After questioning, neither parent could say how Plaintiff Child contracted gonorrhea.

23. On January 16, 2010 Plaintiff Child was removed from the home of her natural parents, Plaintiffs Denzil and Sheryl Bernard, at 616 Midwood Avenue, Apt. 2F, Brooklyn, NY 11203 by ACS caseworker, Defendant Aloma Johnson.

24. On January 19, 2010 ACS filed a petition in Brooklyn Family Court charging that Plaintiff Parents were responsible for their child contracting gonorrhea, which constitutes abuse. It was ordered that Plaintiff Child be placed in foster care with relatives, her maternal aunt Eavean Bernard and fiancé Mark Stephenson, at their home at 9563 Schenck Street, Brooklyn, 11236. Plaintiff Parents were allowed visiting privileges and were ordered to participate in a parenting skills training program including individual therapy. Plaintiff Child was also to undergo individual therapy.

24. Plaintiff Parents completed the first part of the training program at Beverly Mack Harring Consulting Services, Inc. in June 2010 and began the second, final part of the training program at MercyFirst Foster Care in September 2010.

25. In the summer of 2011, at the recommendation of MercyFirst, Plaintiff Child

began seeing Defendant Jasmine Usher, LCSW at Brooklyn Family Psychological Services for weekly individual psychotherapy. Foster father Mr. Stephenson accompanied Plaintiff Child to therapy and participated in collateral therapy sessions.

26. It was during the time that Plaintiff Child was undergoing individual therapy with Defendant Usher that Mr. Stephenson got to know Defendant Usher and began an affair with her.

27. Beginning in January 2012, Defendant Usher requested to see Mr. and Mrs. Bernard for collateral sessions. At this point, parents have completed the parenting skills training program required by the court to regain custody of their daughter. Plaintiffs were unaware of the affair between Mr. Stephenson and Defendant Usher at this time.

28. Over the course of the year Defendant Usher wrote letters to ACS, explaining that it is of her professional opinion that Mrs. Bernard posed a continued risk to her daughter and that the child should remain in the care of her foster parents. Based on these letters, although having completed their service plan, Mr. and Mrs. Bernard did not regain custody of their daughter and continue family therapy at Brooklyn Family Psychological Services.

29. In February 2012, Mr. Stephenson moves out of the residence he has been sharing with foster mother Eavean Bernard. However, Mr. Stephenson continues to attend therapy sessions with the child at Brooklyn Family Psychological Services despite the fact that he is no longer the child's foster parent. Plaintiffs are still not aware of the affair.

30. On February 27, 2013, ACS and Mercy First are granted the ability to send the child back to her parents under a trial discharge upon 20 days notice to all counsel. The Plaintiff's had completed their service plan in 2012 and the only barrier to the return of the child were the letters from Defendant Usher.

31. Approximately April of 2013, caseworkers from Mercy First and ACS find out about the affair between Plaintiff Child's therapist, Defendant Usher, and child's foster father, Mr. Stephenson, but do not take appropriate action to investigate and evaluate the claims made against Mr. and Mrs. Bernard made by Defendant usher and whether the child should be returned immediately. Despite knowing that the only impediment to return the child to Plaintiffs were the letters from Defendant Usher, neither Mercy First or ACS did anything to assess their position even thought they had the authority to send the child home on a trial discharge

32. On information and belief, Defendant Usher may not have been a licensed clinical social worker even though she was held out as such by Brooklyn Family Psychological Services, and as someone who was a psychotherapist.

33. In a Permanency Hearing on August 5, 2013, Plaintiffs finally regain custody of their daughter after a ruling in Brooklyn Family Court.

34. In the time it took between April 2013, when ACS and Mercy First found out about the affair and after the Adult Plaintiffs had completed the parenting skills training program, and Augusts 5, 2013, the date of the final Permanency Hearing, the child remained in foster care. ACS has not provided an explanation for why there was such a great lapse in time, and why, after finding out about the affair between Defendant Usher and Mr. Stephenson, they did not take action to return the child or acknowledge the issue to the court or the Plaintiffs.

35. But for the letters from Defendant Usher, Plaintiffs had completed their service plan and the child should have been returned to them forthwith. If the workers from the Mercy First and ACS had revealed the affair, the child would not have remained in care as long as she did.

36. ACS and Mercy First were deliberately indifferent to the fact that the therapist they

were basing the continued removal on had a conflict of interest and was acting with unclean hands.

## **FIRST CAUSE OF ACTION: INADEQUATE TRAINING AND SUPERVISION**

### **(Against ACS and Mercy First)**

37. Plaintiffs repeat and re-allege the foregoing.

38. Defendants City provided grossly inadequate and unprofessional training and supervision for their agents and employees regarding:

    A. investigating child abuse and neglect cases;

    B. investigating the reliability of statements made by persons they contract to provide services when conflicts of interest are clearly present.

    C. proper documentation of any evidence used to determine whether there exists probable cause to believe that the care of a parent presents an imminent danger to the child's life or health;

    D. the constitutional rights of parents and children in child welfare investigations.

    E. the rights of parents to be free from abuse of process.

    F. providing proper services for children in their care.

39. Defendants City knew or should have known that their employees were improperly trained and supervised in said issues.

40. Defendants City knew or should have known that their employees would confront said issues in their work and that, without training, would make the wrong decisions on said issues.

41. By reason of their lack of training, Defendants Abrams, Laylock, Leeks, and Young improperly detained the Plaintiff Child S.B. in foster care.

42. By reason of their lack of training, all Defendants detained child Plaintiff from adult Plaintiffs and then restricted the child's access to their parent, and the mother's access to the child, without adequate notice to Plaintiffs, without adequate investigation, and without due process of law.

43. As a result of Defendants' actions, the adult Plaintiffs suffered the loss of the custody and care and guidance of their child; the child Plaintiff suffered her loss of liberty and was deprived of the care and guidance of her parents; and all Plaintiffs suffered extreme humiliation, pain and suffering, terror, mental anguish and depression.

## SECOND CAUSE OF ACTION: FAILURE TO PROVIDE DUE PROCESS

44. Plaintiffs reallege and incorporate by reference the prior paragraphs.

45. When defendants were ordered to evaluate Adult Plaintiff's parenting skills and abilities as a condition of Child Plaintiff's stay in foster care, defendants entered into a special relationship with Child S.B. that imposed upon defendants an affirmative duty to care for and protect S.B. under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

46. Defendants breached that duty. Defendants actions and omissions were a substantial departure from the exercise of reasonable professional judgment, practice, and standards, were grossly negligent, and amounted to a deliberate indifference to Plaintiffs' health. As the child plaintiff was in the custody of the defendant City and under the supervision of defendant Mercy First, defendants City and Mercy First had a special relationship with the child, and owed her a duty of adequate supervision.

47. Defendants City and Mercy First had a duty to use the highest degree of care in supervising children placed in their care, including the child plaintiff.

48. Defendants City and Mercy First breached this duty. Defendants' actions and omissions were a substantial departure from the exercise of a reasonable professional, judgment, practice, and standards, were grossly negligent and amounted to deliberate indifference to the child plaintiff's health and welfare.

49. Defendants acted with deliberate indifference to and callous disregard of repeated and clear indications and signs that the child remained in care due to the letters from the child's therapist even though they knew she was having an affair with the child's former foster parent.

50. Defendants failed to ensure the safety and well-being of the child while they were supervising his home because they did nothing when they found out about the illicit affair between the child's therapist and foster parent, thereby proximately causing her substantial and unnecessary emotional harm from the continued separation from her parents.

51. By virtue of the foregoing, the Caseworker Defendants and the Supervisor Defendants deprived Plaintiff Child of rights protected by the Due Process Clause of the United States Constitution.

52. S.B.'s substantive due process rights were clearly established constitutional rights at the time of Defendants' acts and omissions, and a reasonable individual would have known that their acts and omissions would violate these clearly established constitutional rights.

53. By reason of the foregoing, the Child Plaintiff suffered significant pain and suffering, terror, mental anguish and anxiety.

## THIRD CAUSE OF ACTION: INTERFERENCE WITH PARENTS' CUSTODY OF MINOR CHILDREN

54. Plaintiffs reallege and incorporate by reference paragraphs 1 through 54.

55. By detaining the child Plaintiff from adult Plaintiffs, all Defendants unlawfully interfered with Plaintiffs' custody of their minor child.

56. By submitting letters to prevent the return of the child, Defendant Usher unlawfully interfered with Plaintiff's custody of their minor child.

57. By employing someone who on information and belief was not a licensed therapist and who they knew or should have known was having an affair with the child's foster father.

58. As a result of Defendants' actions, the adult Plaintiffs suffered the continued loss of the custody of and restricted access to their child incurred medical, legal, counseling, and other expenses; the child Plaintiff suffered the loss of liberty and of the care and guidance of her parents; and all Plaintiffs suffered extreme humiliation, pain and suffering, terror, mental anguish and depression.

## FOURTH CAUSE OF ACTION: UNLAWFUL SEIZURE

59. Plaintiffs reallege and incorporate by reference all prior paragraphs.

60. By relying on suspect letters from the child's therapist and continuing the removal and detention of the Plaintiff Child, Defendants unlawfully imprisoned Plaintiff Child.

61. As a result of Defendants' actions, the Plaintiffs Sheryl and Denzil Bernard suffered the loss and restrictions on their parental access to their child.

62. As a result of Defendants' actions, the adult Plaintiffs suffered the loss of the custody and care and guidance of their child, lost wages, and incurred medical, legal, counseling and other expenses; the child plaintiff suffered the loss of liberty and was deprived of the care and guidance of her parents; and all Plaintiffs suffered extreme humiliation, pain and suffering,

ten-or, mental anguish and depression.

## FIFTH CAUSE OF ACTION: SPECIAL DUTY OF CARE

63. Plaintiffs reallege and incorporate by reference all prior paragraphs.

64. All of the Defendants had a duty to act with reasonable care toward Plaintiffs and with the highest degree of care toward the child Plaintiff.

65. Defendants prolonging the detainment of the child Plaintiff constituted gross breaches of said duty and gross deviations from accepted professional standards.

66. As a result of Defendants' actions, the adult Plaintiffs suffered the loss of the custody and care and guidance of their children, lost wages, and incurred medical, legal, counseling and other expenses; the child Plaintiff suffered the loss of liberty and was deprived of the care and guidance of her parents; and all Plaintiffs suffered extreme humiliation, pain and suffering, terror, mental anguish and depression.

## SIXTH CAUSE OF ACTION: CUSTODIAL INTERFERENCE

67. All prior paragraphs are realleged and incorporated by reference herein.

68. The actions and or omission of all of the Defendants caused the custodial interference of Plaintiffs to maintain unrestricted access to their child, the Infant Plaintiff, herein in violation of their rights.

69. These unlawful acts were caused by the acts and/or omissions of the Defendants complained of herein.

70. Plaintiffs were denied the enjoyment of their child's company even though they had completed everything asked of them as conditions to the return of their child.

71. Even after the discovery of Defendant Usher's transgression, Defendants

continued to keep the child from her parents during some of her most formative years.

## SEVENTH CAUSE OF ACTION
## 42 U.S.C. § 1983/Deliberate Indifference/Due Process

### (Against All Defendants)

72. Each of the foregoing paragraphs is hereby repeated and incorporated by reference as if fully set forth herein.

73. All of the Defendants acted under color of New York State law.

74. S.B. had a constitutional right to be free from unjustified intrusions on her personal liberty, privacy, and security, in the form of physical and psychological abuse, while in government custody.

75. S.B. had a constitutional right to be protected from physical and psychological injury while in government custody.

76. Defendants improperly screened and investigated Jasmine Usher and improperly authorized her to be licensed clinical therapist for S.B.

78. Defendants' reckless screening, investigation, appointment, retention, and supervision of Jasmine Usher, and their initial and continued placement of S.B. based on Usher's reports was a substantial factor leading to the denial of the constitutionally protected liberty, privacy, and personal security interests of S.P. and her substantive due process right to protection from harm in which she continued to be separated from her parents.

79. Defendants failed to supervise S.B. properly while she was in foster care. They required that S.B. received therapy prior to her return home, however they didn't provide her with an appropriate therapist which delayed her return to her parents.

80. In improperly investigating Usher, failing to supervise S.B. in the foster home,

keeping S.B. in the home even after they discovered the affair between Usher and the foster paretn, and by this other conduct set forth above, Defendants were deliberately indifferent to S.B.'s health and safety and failed to exercise acceptable professional judgment and instead departed extremely from the exercise of acceptable professional judgment, and abused their power as foster care officials and employees.

81. A permanency hearing regarding when the child could be returned to the parents was held in February 2013 and the reason the child remained in care was because of the reports from Defendant Usher. Even despite those reports the Defendants were given the right to trial discharge S.B. back to her parents. Despite the discovery of Ushers's conflict and transgressions they continued to keep her in foster care and never revealed the issue to the court.

82. The failure of City Defendants to supervise the foster care system, as described above, was so widespread as to demonstrate a deliberate indifference to the needs of children placed in foster care that constituted a municipally sanctioned custom or policy.

83. These policies concerning the supervision of children in foster care were conducive to violations of constitutional rights and they played a substantial part in the denial of S.B's constitutional rights.

84. Defendants knew or should have known that inadequate supervision was likely to result in the violation of constitutional rights of S.B. and others in foster care.

85. Defendants knew or should have known that a failure to supervise and failure to act to remedy the inadequate oversight of New York City's foster care

system would lead to violations of the constitutional rights of S.B. and others in foster care.

86. Defendants also had an obligation to provide S.B. with necessary and competent therapeutic treatment while in government custody.

87. Defendants failed to provide S.P. with proper therapeutic treatment while S.B. was in government custody and knew or should have known that the person they did provide was on information and belief, not a licensed therapist and had a conflict of interest as she was romantically involved with the foster parent of S.B.

88. Defendants' deliberate indifference to S.B.'s therapeutic needs significantly delayed her return to her parents. Defendant's required her to obtain therapy before they would return her to her parents and relied on the reports of the therapist to maintain her in care. Yet they didn't provide her with a proper therapist and when they discovered the conflict of interest, they did not remedy the problem and return her to her parents even though they had the ability to do so.

89. By reason of their acts and omissions, Defendants, acting under color of state law, in gross and wanton disregard of S.B.'s rights, deprived S.B. of her liberty, privacy, and security and of her right to be free from unjustified intrusions on her personal security, in violation of the Fourteenth Amendment to the United States Constitution.

90. As a result of Defendants' failures, S.B. was subjected to repeated pain and suffering, terror, mental anguish, anxiety and mental injuries by the continued separation from her parents and her parents suffered from the continued separation from their child.

## EIGHTH CAUSE OF ACTION

### Breach of Contract

### (Against Mercy First, Brooklyn Family Psychological Services and the City)

91. Each of the foregoing paragraphs is hereby repeated and incorporated by reference as if fully set forth herein.

92. At all times applicable, Mercy First was a party to contracts with the City, pursuant to which Mercy First agreed to provide foster care to children who were placed in the custody of the Commissioner.

93. Pursuant to said contracts, the City agreed to compensate Mercy First.

94. Pursuant to said contracts, Mercy First was required to provide safe, competent, and professional supervision of children in foster care and to protect children in their care.

95. As a foster child in the care of Mercy First, S.B. was the beneficiary of the contracts between the City and Mercy First.


97. By their reckless screening, investigation, appointment, retention, and supervision of Jasmine Usher, and their continued placement of S.B. in foster care, Mercy First breached its contract with the City.

98. By reason of the foregoing, S.B. suffered terror, mental anguish, anxiety, and extraordinary physical and mental injuries by the continued separation from her parents.

99. Brooklyn Family Psychological Services agreed to provide therapeutic services to S.B. and contracted with either/or Mercy First and ACS. By their reckless screening, investigation, appointment, retention, and supervision of Jasmine Usher, S. B. remained in

placement when she was ready to return to her parents and suffered the injuries as stated above.

## NINTH CAUSE OF ACTION

### Negligence

### (Against All Defendants)

100. Each of the foregoing paragraphs is hereby repeated and incorporated by reference as if fully set forth herein.

101. The Defendants had a duty to care for the health, safety, and well-being of children in foster care.

102. As S.B. was in the custody of the City Defendants and under the supervision of Mercy First, the Defendants had a special relationship with S.B., and owed her a duty of adequate supervision. By providing therapeutic services, Brooklyn Family Psychological Services also had a special relationship with S.B.

103. The Defendants had a duty to use the highest degree of care in supervising foster children, including S.B.

104. The Defendants breached this duty by their reckless screening, investigation, appointment, retention, and supervision of Defendant Usher, and their continued placement of S.B. in care after they discovered the transgressions by Usher.

105. In failing to provide S.B. proper therapy, and keeping her in care the Defendants failed to exercise reasonable care in supervising S.B.

106. As a result of the failures of the Defendants, and the breach of their duty, S.P. was subjected to extended foster care placement and separation from her family.

107. The Defendants also had an obligation to provide S.B. with necessary and competent therapeutic treatment while in government custody as they made it a condition of her return to her parents.

108. The Defendants recklessly failed to provide S.B with proper therapeutic treatment while S.B. was in their custody and exhibited deliberate indifference to S.B.'s therapeutic needs, resulting in significant delay in S.B. being returned home.

109. In addition, Defendant City, as employer is responsible for their wrongdoing under the doctrine of *respondeat superior*. Defendant Mercy First, as employer, is responsible for their wrongdoing under the doctrine of *respondeat superior*. Defendant Brooklyn Family Psychological Services as employer is responsible for their wrong doing under the doctrine of respondeat superior.

110. As a result of the failures of the aforementioned Defendants, S.B. suffered terror, mental anguish, anxiety, and mental injuries.

## PRAYER FOR RELIEF

WHEREFORE, S.B., child by her parents and natural guardians Sheryl Bernard and Denzi Bernard; and Sheryl Bernard, individually, and Denzi Bernard, individually, pray that this Court enter Judgment against all of the Defendants jointly and severally:

A. Awarding Plaintiff S.B. compensatory damages in the amount of TWO MILLION DOLLARS ($2,000,000.00)

B. Awarding Plaintiff Sheryl Bernard individual compensatory damages in the amount of TWO MILLION DOLLARS ($2,000,000.00)

C. Awarding Plaintiff Denzil Bernard individual compensatory damages in the

amount of TWO MILLION DOLLARS ($2,000,000.00)

    D.    Awarding Plaintiffs reasonable attorneys fees pursuant to 42 USC 1988.

    E.    Awarding Plaintiffs costs and disbursements of this action.

    F.    Awarding such other and further relief as the court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiffs hereby respectfully request a trial by jury for all claims and issues in its Complaint to which it is or may be entitled to a jury trial.

Respectfully submitted,

New York, New York
March 29, 2016

RICHARD P. REYES, ESQ.
Law Office of Richard P. Reyes
Attorney for Plaintiffs
305 Broadway, 9th Floor
New York, N.Y. 10007
(212) 966-3761

TO:
Deidre Abrams, CPS caseworker
Administration for Children's Services
150 Williams Street
New York, NY 10038

Theresa Laylock,
Administration for Children's Services
150 Williams Street
New York, NY 10038

Nicole Leeks
Administration for Children's Services

150 Williams Street
New York, NY 10038


CITY OF NEW YORK
NYC Corporation Counsel
100 Church Street
New York, NY 10007

NOELLA YOUNG, caseworker
MercyFirst
186 Montague Street
Brooklyn, NY 11201

MercyFirst
186 Montague Street
Brooklyn, NY 11201

JASMINE USHER, LCSW
Brooklyn Family Psychological Services
1779 Flatbush Avenue
Brooklyn, NY 11210

Brooklyn Family Psychological Services
1779 Flatbush Avenue
Brooklyn, NY 11210